7/28/2017 5:12 PM
Chris Daniel - District Clerk Harris County
Envelope No. 18513157
By: Justin Kitchens
Filed: 7/28/2017 5:12 PM

## 2017-50392 / Court: 215

CAUSE NO. _____

| | | |
|---|---|---|
| DNOW L.P. | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| TRICON PRECAST LTD., PALADIN | § | |
| FREIGHT SOLUTIONS INC., and LUIS | § | |
| ACOSTA HERNANDEZ d/b/a L&M | § | |
| EAGLE EXPRESS. | § | |
| | § | |
| **Defendants.** | § | _____ JUDICIAL DISTRICT |

### DNOW'S ORIGINAL PETITION WITH
### REQUESTS FOR DISCLOSURE, ADMISSION & PRODUCTION

DNOW L.P. files this Original Petition against Tricon Precast Ltd. ("Tricon"), Paladin

Freight Solutions Inc. ("PFS") and Luis Acosta Hernandez d/b/a L&M Eagle Express ("L&M")

as follows:

### I.
### PARTIES

1.      Plaintiff DNOW is a Texas limited partnership with its principal place of business

in Houston, Texas.

2.      Defendant Tricon is a Texas limited partnership with its principal place of

business in Houston, Texas. It may be served with process through its registered agent CSC-

Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620; Austin, Texas 78701.

3.      Defendant PFS is a Tennessee corporation with its principal place of business in

Memphis, Tennessee. It is not registered to do business in Texas and does not maintain a

registered agent within the state. Therefore, it may be served with process through the Texas

Secretary of State.

4.      Defendant L&M Eagle Express is an assumed name for Luis Acosta Hernandez,

**EXHIBIT 1**

an individual who resides in Harris County. He may be served at his residence 7002 Wagonwheel Lane; Houston, Texas 77088.

## II.
## DISCOVERY LEVEL

5.      DNOW requests that discovery be conducted in this case pursuant to Level 2 of the Texas Rules of Civil Procedure.

## III.
## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this lawsuit because DNOW seeks damages in excess of the minimum jurisdictional limits of this Court and because Defendants are subject to the personal jurisdiction of this Court.

7.      Pursuant to Rule 47 of the Texas Rules of Civil Procedure, DNOW states that it seeks monetary relief of $ 100,000 or less and nonmonetary relief.

8.      Venue is proper in Harris County pursuant to Texas Civil Practice & Remedies Code § 15.002 because a substantial part of the events or omissions giving rise to DNOW's claims against Tricon, PFS and L&M occurred in Harris County.

## IV.
## FACTS

9.      On January 13, 2017, DNOW placed Purchase Order Number 659111614 with Tricon, for the purchase and delivery of twenty concrete reinforced barriers. *See* Purchase Order attached as Ex. A. The Purchase Order included a copy of DNOW's Terms and Conditions. *See id.* Tricon accepted the Purchase Order in writing in an email sent to DNOW the same day. *See* Jan. 13, 2017 Email attached as Ex. B.

10.     Under the Purchase Order, Tricon was required to deliver the concrete barriers to DNOW's customer's premises at 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

2

**EXHIBIT 1**

Tricon subcontracted its delivery obligations to PFS, which subcontracted the delivery to L&M.
PFS/L&M's driver, while delivering the barriers on behalf of Tricon, negligently crashed his
truck into a fire hydrant on the premises, which caused substantial property damage. As noted in
a report by the Cleburne Police Department, PFS/L&M's driver left the scene of the accident.

11.    As a result of these events, DNOW was required to reimburse its customer for the
cost to repair the property damage caused by Tricon, PFS and L&M.

12.    Paragraph 6 of the Purchase Order Terms and Conditions requires Tricon to
reimburse and indemnify DNOW for these property damage and repair costs:

> [Tricon] shall protect, reimburse, indemnify and hold harmless [DNOW]…from any loss,
> cost, damage, or expense (including court costs and attorney's fees) arising from (1) the
> breach of this Order and/or the performance of this Order by [Tricon] including…damage
> or loss of any property (including without limitation [DNOW's] or subsequent
> purchaser's property...

Ex. A.

13.    Tricon is clearly obligated to reimburse DNOW for this property damage. And,
DNOW has repeatedly requested that Tricon do so. *See, e.g.,* June 1, 2017 Letter attached as Ex.
C; June 8, 2017 Letter attached as Ex. D. Tricon has refused—and has thereby breached its
contractual obligations to DNOW.

V.
## CAUSES OF ACTION

**COUNT 1: Breach of Contract Against Tricon.**

14.    DNOW repeats and re-alleges the foregoing paragraphs herein.

15.    Tricon entered into a written agreement with DNOW, memorialized in DNOW's
January 13, 2017 Purchase Order and Terms and Conditions.

16.    The agreement required Tricon to deliver concrete barriers to DNOW's customer.

17.    During the delivery, Tricon (through its subcontractors PFS and L&M) caused

3

**EXHIBIT 1**

substantial damage to DNOW's customer's property.

18.     DNOW was forced to reimburse its customer for the property damage and repairs.

19.     In turn, Tricon was contractually obligated to reimburse and indemnify DNOW.

20.     Despite DNOW's repeated requests, Tricon has refused to do so and has thereby breached its contract with DNOW.

21.     As a result, DNOW has suffered in excess of $50,000 in actual damages, plus all applicable interest and attorney's fees.

**Count 2: Negligence Against PFS And L&M.**

22.     DNOW repeats and re-alleges the foregoing paragraphs herein.

23.     PFS and L&M agreed to deliver concrete barriers to DNOW's customer.

24.     PFS and L&M owed DNOW a duty of care to complete the delivery without causing damage to others.

25.     PFS and L&M breached their duties to DNOW by, among other things:

   a.     failure to maintain a proper lookout while driving;

   b.     failure to maintain control of a vehicle;

   c.     failure to maintain a single lane of traffic;

   d.     failure to operate a vehicle in a reasonable manner;

   e.     failure to apply the brakes to avoid a collision; and

   f.     failure to maintain safe and clear distance.

26.     PFS's and L&M's breach caused damage to DNOW's customer's property—which DNOW was required to pay for.

27.     Thus, as a result of PFS's negligent acts, DNOW has suffered in excess of $50,000 in actual damages.

**EXHIBIT 1**

## VI.
### ATTORNEY'S FEES

28.     DNOW repeats and re-alleges the foregoing paragraphs herein.

29.     As a result of Tricon's actions, DNOW has engaged the undersigned attorneys and agreed to pay their reasonable attorney's fees and expenses incurred in prosecuting DNOW's claims. Accordingly, DNOW is entitled under Section 6 of the Purchase Order Terms and Conditions and Chapter 38 of the Texas Civil Practices and Remedies Code to recover its reasonable and necessary attorney's fees and expenses from Tricon.

## VII.
### CONDITIONS PRECEDENT

30.     All conditions precedent to DNOW's claims for relief have been performed or have occurred.

## VIII.
### REQUESTS FOR DISCLOSURE

31.     Under Texas Rule of Civil Procedure 194, DNOW requests that Tricon, PFS and L&M disclose, within fifty (50) days of the service of this request, the information or material described in Rule 194.2.

## IX.
### REQUESTS FOR ADMISSION

32.     DNOW requests that Tricon respond to the Requests for Admission attached hereto as Exhibit E within fifty (50) days of the service of this request, in conformity with Texas Rule of Civil Procedure 198.

33.     DNOW requests that PFS respond to the Requests for Admission attached hereto as Exhibit F within fifty (50) days of the service of this request, in conformity with Texas Rule of Civil Procedure 198.

**EXHIBIT 1**

34.     DNOW requests that L&M respond to the Requests for Admission attached hereto as Exhibit G within fifty (50) days of the service of this request, in conformity with Texas Rule of Civil Procedure 198.

## X.
## REQUESTS FOR PRODUCTION

35.     DNOW requests that Tricon, PFS and L&M respond to the Requests for Production attached hereto as Exhibit H within fifty (50) days of the service of this request, in conformity with Texas Rule of Civil Procedure 196.

## XI.
## PRAYER

36.     Wherefore, DNOW requests that Tricon, PFS and L&M be cited to appear and answer herein, and that after trial or other final hearing a judgment be entered against Tricon, PFS and L&M to recover the following:

a.     economic damages;

b.     reasonable and necessary attorney's fees and other costs incurred in this action and in collecting on the judgment;

c.     pre-judgment and post-judgment interest as allowed by Texas law;

d.     costs of court; and

e.     such other and further relief, both specific and general, in law or in equity, to which DNOW may show itself justly entitled.

Respectfully submitted,

EDISON, MCDOWELL & HETHERINGTON LLP

By:

Michael D. Matthews, Jr.
State Bar No. 24051009
Kate H. Easterling
State Bar No. 24053257

6

**EXHIBIT 1**

First City Tower
1001 Fannin, Suite 2700
Houston, Texas 77002
Telephone:  (713) 337-8879
Facsimile:   (713) 337-8850
E-mail: matt.matthews@emhllp.com

ATTORNEYS FOR DNOW L.P.

7

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT A

**EXHIBIT 1**



# DISTRIBUTION NOW
## DNOW L.P.

**Purchase order 659111614**

Page 1 of 4

**Vendor:**
TRICON PRECAST LTD
15055 HENRY RD
HOUSTON TX 77060
Tel No. 281-931-9832
Fax No. 281-931-0061
Your Vendor Number with us 1002018

**Please Deliver To:**
DNOW L.P.
CLEBURNE DSC
2909 NORTH MAIN STREET
CLEBURNE TX 76033
Tel No. 817-556-0610
Fax No. 817-556-2784

**Information:**
PO Date: 01/13/2017
Contact Person: RUBEN MARTINEZ
Email: Ruben.Martinez2@dnow.com
Currency: USD
Ordering Plant : TX60
Delivery Date: 01/13/2017
Final Destination: USA

**MAIL INVOICE AND CORRESPONDENCE TO:**
DNOW L.P.
ATTN:DISTRIBUTION ACCOUNTS PAYABLE
PO Box 40985
Houston TX 77240-0985

SHIPPING INSTRUCTIONS:
PLEASE NOTE SHIPPING INSTRUCTIONS HAVE CHANGED AS OF 10/24/14.

Shipping Instructions:

Free freight allowed orders, use your best method.

If not free freight allowed, please ship as follows:

All bills of lading or documentation for this order must contain this PO number and in a reference field place
our cost center number 107808.

Single-piece shipments under 150# and multi-piece shipments under 300# combined weight, ship UPS.

UPS shipment rules:

(1)  use UPS Account # E82A25
(2)  place NOV PO # in the Reference field
(3)  max weight of any single piece is 150#
(4)  DO NOT PALLETIZE FOR UPS and do NOT ship UPS Freight

** The Last Pages are the Terms and Conditions **

**EXHIBIT 1**

# DISTRIBUTION NOW

## Purchase order 659111614

Page 2 of 4

Information:
PO Date: 01/13/2017

For single-piece shipments over 150# or multi-piece shipments over 300# combined weight, refer to DNOW route guide and ship collect.

If not shipping direct to DNOW, bill freight third party bill to P.O. Box 40498 Houston, TX 77240, with PO & cost center numbers attached.

The current DNOW route guide can be reached at the web address provided below

www.distributionnow.com/freight

The DNOW routing guide is updated to insure that all lanes have the correct carrier listed

For questions, instructions, or shipments over 10,000#, contact our freight department at 281 823 4665.

DNOW will only pay for domestic freight shipped as described above.

| Item | Material/Description | Order Qty. | UM | Price per Unit | Net Value |
|------|----------------------|------------|-----|----------------|-----------|
| 10 | ZNIP110<br>BARRIER CONCRETE 10 CTB PLAIN 2PCTB2-04<br>Item Release Date (Based on Vendor's Lead Time): 01/13/2017<br>Sales Order 16381073 Item 000010 | 20 | EA | 369.00 | 7,380.00 |
| 20 | ZNIP110<br>TRUCKING<br>Item Release Date (Based on Vendor's Lead Time): 01/13/2017<br>Sales Order 16381073 Item 000020 | 2 | EA | 775.00 | 1,550.00 |
| | | Total Net Item Value excluding TAX USD | | | 8,930.00 |

** The Last Pages are the Terms and Conditions **

**EXHIBIT 1**

## DNOW L.P. and its AFFILIATES ("Buyer") PURCHASE ORDER TERMS AND CONDITIONS

These Terms and Conditions are part of the printed Purchase Order located on the reverse of this form or which are attached to these Terms and Conditions (collectively "Order"). Unless otherwise agreed to by an authorized representative of Buyer, these Terms and Conditions shall override any terms and conditions of sale of Seller. This Order contains the complete, sole and final agreement between Buyer and Seller and no agreement or other understanding in any way purporting to modify the Order hereof, shall be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.

**Price protection:** By acceptance of this Order, Seller agrees that the prices contained herein are not in excess of Seller's list, catalog or published prices; that such prices are not higher than prices charged to other purchasers purchasing similar goods and services; that the said prices are not in excess of the prices provided by any applicable law, government decrees, order or regulation. If reference to the price is omitted from the Order or any acknowledgment thereto, it is agreed that the items herein ordered shall be priced at that figure which was last quoted by Seller to or paid by Buyer or at the prevailing market price, whichever is lowest.

**Invoices:** Seller shall submit invoices, in number of copies specified on the face of this Order, on date of shipment for each and every separate shipment. Delays in receiving invoices, errors, or omissions shall be considered just cause for withholding payment without loss of cash or time discount privileges

**Time is of the essence.** Time is of the essence with respect to the delivery date indicated on the face hereof and Buyer reserves the right to terminate this Order if the specified delivery date is not met. Notwithstanding any other right or remedy available to Buyer, in the event of Seller's failure to meet the delivery date indicated on the face hereof, Buyer at its discretion may charge to Seller, and Seller agrees to be liable for, any economic loss suffered by Buyer due to Seller's late delivery.

**Shipping:** Seller will observe specified shipping instructions, and unless otherwise requested, ship goods by the best reasonable method possible. If goods and services are forwarded via an unreasonable and expensive method, excess charges will be for the account of Seller. All packaging instructions must be observed. Buyer will not pay for packing unless specifically agreed. Unless otherwise specified, title to the goods will vest in Buyer upon acceptance of the goods by Buyer or upon identification of the goods to the order, whichever is earlier. Seller warrants title to the goods free and clear of all liens, taxes or encumbrances whatsoever. Irrespective of vesting of title, Seller will bear the risk of loss and damage of the goods until the same are delivered in good condition and accepted by Buyer in accordance with this Order. Shipments in excess of the quantities specified in this Order, without permission of Buyer, are subject to return for credit at Buyer's option and at Seller's expense.

**Inspection:** Buyer shall have the right to inspect all goods ordered in Seller's possession before shipment and after arrival at any shipping destination at any business time. Buyer or subsequent purchaser may reject any and all goods not substantially conforming to technical specifications of the Order. Such rejected goods will be at Seller's sole risk and expense. Any inspection by Buyer pursuant to the provisions of this Order shall not release Seller from any of the warranty obligations stated herein.

**Indemnity:** Seller shall protect, reimburse, indemnify and hold harmless the Buyer and any of its subsidiaries and affiliates from any loss, cost, damage, or expense (including court costs and attorney's fees) arising from (1) the breach of this Order and/or the performance of this Order by Seller, including injury or death of any person, or damage or loss of any property (including without limitation Buyer's or subsequent purchaser's property) asserted against or incurred by Buyer or the other indemnities at any time, unless due to Buyer's sole gross negligence; (2) any claims or actions; incident to any infringement or claimed infringement of any patent in the manufacture, use, and/or sale of goods. In this case Seller also agrees to furnish to Buyer an equivalent substitute good of equal or better quality; (3) any claims arising out of Seller's failure to comply with any applicable laws, treaties, ordinances, codes, and regulations, (4) any claims or liens attaching to the property or equipment of Buyer, and (5) any claims arising in connection of payroll taxes and employee benefits of Seller's personnel.

**Insurance:** Seller agrees to carry at its sole expense the following insurance with insurers having an AM Best rating of A- or better on a form satisfactory to Buyer: **Comprehensive General Liability Insurance** including Contractual, Products and Completed Operations Insurance and Sudden and Accidental Pollution, covering all operations and work hereunder in the amounts of not less than $1,000,000 for bodily injury and property damage. Such insurance shall specifically refer to this contract and shall specifically cover on a primary basis the liability assumed by Seller hereunder. Seller also agrees to carry, at its sole expense, **Automobile Liability** including all owned, hired and non-owned vehicles used in connection with operations and work performed under this agreement with $1,000,000 Combined Single Limit. **Workers' Compensation/Employers Liability** covering Seller's employees, Statutory WC, plus $1,000,000 in Employers Liability and in Compliance with the laws of states in which Seller is performing work hereunder. **Umbrella/Excess Liability** no less than $5,000,000 in excess of the above listed insurance. All policies shall name Buyer and all affiliates as Additional Insured on all policies except Workers' Compensation and Employers Liability and provide a Waiver of Subrogation on all policies as respects to work performed or services and products provided under this agreement. Seller shall immediately furnish Buyer with a certificate of insurance pursuant to above requirements. Certificate holder will be listed as Buyer and all affiliated companies. Seller must provide thirty (30) days' notice of Cancellation on all policies listed on Certificate of Insurance to Buyer. If Seller's operations include professional services, Seller shall also maintain Professional Liability Insurance with limits of $5,000,000. **The above requirements are minimum requirements and shall not limit Seller's liability to Buyer and its affiliated companies in any manner.**

**Warranty:** Seller warrants that the goods provided will (a) strictly conform to the specifications and other requirements stipulated in the Order or the attached specification sheets; (b) be of merchantable quality and fit for the purpose(s) intended; (c) conform with all applicable laws, ordinances, codes and regulations, and, unless Seller's standard warranty provides for a longer period, (d) be free from all defects for a period of twelve (12) months after being placed into service by Buyer or a subsequent purchaser or twenty-four (24) months from date of acceptance by Buyer, whichever period expires earlier. If within the warranty period, Buyer or subsequent purchaser discovers any defect, error, nonconformity, omission, deficiency, or breach of any warranty as to the goods, Seller will, at Buyer's option, promptly repair, re-perform, or replace the goods in question at Seller's sole cost. Any repaired, re-performed, or replaced good shall be warranted for a period of the remaining twelve (12) months from its acceptance by Buyer or subsequent purchaser. Should Seller's standard warranty for Goods exceed the warranty stated herein, those parts of the warranty that exceed shall automatically be incorporated herein.

**Product Alerts:** In order to assure the proper and safe use of goods, Seller warrants that it shall furnish together with all goods offered all appropriate so-called "product warnings" adequate to permit such proper and safe use of the goods.

**Cancellation:** Unless otherwise provided, Buyer has the right at any time to terminate all or part of the order by written notice. Upon termination, or any other circumstances, Seller will not be entitled to any lost profit, lost revenue, lost business opportunity, or any incidental, indirect, economic, consequential, or other damages, nor will Buyer be liable to pay any costs of termination.

**Confidential Information.** All Buyer information is proprietary and confidential to Buyer and will be used solely by Seller for the purposes of this order. Any and all such Buyer information shall be treated and protected by Seller as strictly confidential and shall not be disclosed to any third party without the prior written consent of Buyer. Seller agrees that it will not use any Buyer information related to the goods or services or otherwise obtained under this Order (including, but not limited to, Buyer's company or trade names (in any form) or the fact that it is doing business with Buyer, in

# EXHIBIT 1

any marketing, advertising or public relations material of Seller without the express, written consent of Buyer. Such consent can be withheld at the sole discretion of Buyer.

**Governing Law**: Buyer and Seller agree that this Order shall be governed by the laws of the State of Texas, without regard to any conflicts of law principles of said jurisdiction that might require application of the laws of another jurisdiction. Buyer and Seller agree that all disputes in any way arising out of or resulting from this Order shall be litigated, if at all, exclusively in the state and/or federal courts in Harris County, Texas.

**Assignment**: Seller shall not assign its rights and obligations under this Order without prior written approval from Buyer. Buyer, however, may assign its rights and obligations under this Order to any of its subsidiaries or affiliates without Seller's consent. This Order shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

**Miscellaneous**:

a. Seller warrants that it has neither given nor received any commissions, payments, gifts, kickbacks, lavish or extensive entertainment, or other things of value to or from any employee or agent of Buyer or any third party in connection with this order and acknowledges that the giving or receiving of same would be a violation of Buyer's corporate policy and may result in the cancellation of this and all future orders.

b. Any clause required to be included in a contract of this type by any applicable and valid federal, state or local law or administrative rule or regulation having the effect of law shall be deemed to be incorporated herein, including but not limited to any required affirmative action compliance program, minority business enterprises subcontractor program, employment of the handicapped, listing of employment openings for veterans, or equal opportunity clause.

c. Seller agrees that all original work, including but not limited to drawings, specifications, maintenance publications and the like, qualify as work for hire to Buyer and as such are assigned to Buyer.

d. All notices hereunder shall be deemed given if delivered in writing personally or by courier, or sent by U.S. mail, electronic transmission, telephone facsimile, or telegram to Buyer or to Seller at the address set forth in this order. Any notice given by mail or post shall be deemed given at the time such notice is deposited in the mail.

e. If requested by Buyer, Seller shall provide Buyer with Export Control Classification Numbers ("ECCN") for applicable goods purchased hereunder. Seller shall also provide all relevant documentation relating to the manner in which the ECCN was derived.

f. Buyer's failure to insist on performance of any term, condition, or instruction, or failure to exercise any right or privilege, or Buyer's waiver of any breach or default, shall not thereafter waive any such term, condition, instruction, right or privilege. No waiver of any provision of this Order, or a breach hereof, shall be effective unless it is in writing and signed by an authorized representative of Buyer. No waiver of a breach of this Order (whether express or implied) shall constitute a waiver of a subsequent breach.

g. In addition to all of the remedies provided herein, Buyer hereby reserves all additional rights and remedies provided by law or equity.

h. Buyer shall have a transferable, perpetual, royalty-free license to use all inventions, innovations, development, software or improvements, including but not limited to any patentable items, procedures, processes or concepts made in connection with or arising in whole or in part from performance or operation of the goods, materials, or services under this Order.

i. Unless expressly approved in writing by authorized representative of Buyer, Seller has no authority to bind Buyer to any obligation or to enter into any agreement for the benefit of or on behalf of Buyer even if pursuant to or in furtherance of this Order and even if Buyer realizes a benefit thereof.

j. In all circumstances, including Cancellation, Termination, Suspension, Force Majeure or prior cessation of this Order for any reason, Seller shall use its best efforts and act in good faith to limit any potential damages or additional expenses to Buyer and shall keep Buyer reasonably informed.

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT B

**EXHIBIT 1**

| From: | Ann Tyler |
|---|---|
| To: | Martinez, Ruben |
| Subject: | [EXTERNAL] RE: 659111614 |
| Date: | Friday, January 13, 2017 10:09:57 AM |

Good morning!

I have released the order to our freight department. They will be contacting Jay today. Thank you for the order. Have a great day!

**From:** Martinez, Ruben [mailto:Ruben.Martinez2@dnow.com]
**Sent:** Friday, January 13, 2017 9:39 AM
**To:** Ann Tyler
**Subject:** 659111614

Good Morning,

Please process attached PO , and ship as soon as possible to :

Mackey Yard

423 W Vaughn Rd

Cleburne, Tx 76033

ATTN : JAY SCOGIN 817-487-3792

THANK YOU

**Ruben Martinez**

**DistributionNOW**

2909 N. Main

Cleburne TX, 76033

Ruben.Martinez2@dnow.com

Direct: 817.556.0610

Moble: 817.240.8405

Fax: 817.556.2784

distributionnow.com

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT C

**EXHIBIT 1**

DISTRIBUTION



**Valeria Rincon**
**Corporate Counsel**

DNOW L.P.
7402 N. Eldridge Parkway
Houston, TX 77041
PHONE: 281-823-4864
FACSIMILE: 281-823-5225
Valeria.Rincon@dnow.com

Houston, June 1, 2017

Gilbert Flores
General Partner
Tricon Precast Ltd.
15055 Henry Dr.
Houston, TX 77060

Re: Damages caused by Tricon's subcontractor at 423 W Vaughn Rd, Cleburne TX 76033

Mr. Flores,

On January 13 of the present year, DNOW L.P. ("DNOW") placed Purchase Order ("PO") Nr. 659111614 with your company for the purchase and delivery of concrete reinforced barriers to DNOW's customer premises. The last pages of this PO include the governing terms and conditions of this transaction ("T&C's"). Please find a copy attached for your reference as attachment "A".

Tricon accepted this PO by e-mail sent on January 13, 2017 by Ann Tyler to Ruben Martinez with no comment or objection regarding the PO nor the T&C's that were attached to the PO. Please find a copy of this e-mail as attachment "B" enclosed to this letter.

As agreed, Tricon Precast Ltd. ("Tricon") delivered the products to DNOW's customer premises at 423 W Vaughn Rd, Cleburne TX 76033 on January 18, 2017. Right after the products were delivered, just when the driver was departing from the customer's premises between 8-10 AM, the driver crashed into a water hydrant located at DNOW's customer premises, causing several damages. Please find attached pictures that compare the condition of the premises right when the trucking company was entering the premises at 9:08AM (Attachment "C") and then after the truck left at 9:09AM (Attachment "D"). You can see the significant leak of water and additional damages right in the entrance of the premises ("Attachment "E").

Paragraph 6 of the T&C's that apply to this transaction states the following:
"Seller shall protect, reimburse, indemnify and hold harmless the Buyer and any of its subsidiaries and affiliates from any loss, cost, damage, or expense (including court costs and attorney's fees) arising from (1) the breach of this Order and/or the performance of this Order by Seller, including injury or death of any person, or damage or loss of any property (including without limitation Buyer's or subsequent purchaser's property) asserted against or incurred by Buyer or the other indemnities at any time, unless due to Buyer's sole gross negligence; (2) any claims or actions, incident to any infringement or claimed infringement of any patent in the manufacture, use, and/or sale of goods, in this case Seller also agrees to furnish to Buyer an equivalent substitute good of equal or better quality; (3) any claims arising out of Seller's failure to comply with any applicable laws, treaties, ordinances, codes, and regulations, (4) any claims or liens attaching to the

**EXHIBIT 1**

property or equipment of Buyer, and (5) any claims arising in connection of payroll taxes and employee benefits of Seller's personnel."

According to paragraph 6 of the T&C's, Tricon is responsible for all damages to DNOW's customer premises arising out of the performance of the PO. DNOW placed an order with Tricon for the purchase and delivery of products, which means that "performance of the order" includes delivery of products regardless if this delivery was performed by Tricon or Tricon's subcontractor. We are aware that Tricon subcontracted the delivery portion of the PO and that Tricon retained a trucking company of Tricon's choice to complete this delivery. However, this does not change Tricon's contractual and legal obligation to indemnify us for the damages caused by Tricon's subcontractor to our customer's premises.

We have been notified by our business team that they have tried to contact your company several times to try to resolve this matter in an amicable way but they have not received a positive answer yet.

Based on the above we demand an immediate payment of USD $49,079.50 to cover all the damages caused by your subcontractor at DNOW's customer premises. Attached please find a quote for USD $46,389.50 sent by a third party company that shows the breakdown of all the repairs that must be done to the damaged building (attachment "P"). In addition to this quote, there is another third party's quote for repairs to be done to the road at USD $2,340. The total cost to bring the premises to the same condition they were before your subcontractor caused all the damages is USD $49,079.50.

Please send your response as soon as possible and in no event later than June 8 of 2017. If we do not receive a response prior to this date, we will proceed with legal actions.

If you or your Attorney have any questions, please feel free to contact me.

Yours truly,

Valeria Rincon.

**EXHIBIT 1**

"A"

# DISTRIBUTION NOW.
DNOW L.P.

## Purchase order 659111614

Page 1 of 4

**To:**
TRICON PRECAST LTD
15055 HENRY RD
HOUSTON TX 77060
Tel No. 281-931-9832
Fax No. 281-931-0061
Your Vendor Number with us 1002018

**Please deliver to:**
DNOW L.P.
CLEBURNE DSC
2909 NORTH MAIN STREET
CLEBURNE TX 76033
Tel No. 817-556-0810
Fax No. 817-556-2764

**Information:**
PO Date: 01/13/2017
Contact Person: RUBEN MARTINEZ
Email: Ruben.Martinez2@dnow.com
Currency: USD
Ordering Plant : TX60
Delivery Date: 01/13/2017
Final Destination: USA

**MAIL INVOICE AND CORRESPONDENCE TO:**
DNOW L.P.
ATTN: DISTRIBUTION ACCOUNTS PAYABLE
PO Box 40985
Houston TX 77240-0985

**SHIPPING INSTRUCTIONS:**
PLEASE NOTE SHIPPING INSTRUCTIONS HAVE CHANGED AS OF 10/24/14.

Shipping Instructions:

Free freight allowed orders, use your best method.

If not free freight allowed, please ship as follows:

All bills of lading or documentation for this order must contain this PO number and in a reference field place
our cost center number 107808.

Single-piece shipments under 150# and multi-piece shipments under 300# combined weight, ship UPS.

UPS shipment rules:

(1)  use UPS Account # E82A25
(2)  place NOW PO # in the Reference field
(3)  max weight of any single piece is 150#
(4)  DO NOT PALLETIZE FOR UPS and do NOT ship UPS freight

** The Last Pages are the Terms and Conditions **

**EXHIBIT 1**

DISTRIBUTION**NOW**

# Purchase order 659111614

Information:
PO Date: 01/13/2017

For single-piece shipments over 150# or multi-piece shipments over 300# combined weight, refer to DNOW route guide and ship collect.

If not shipping direct to DNOW, bill freight third party bill to P.O. Box 40498 Houston, TX 77240, with PO & cost center numbers attached.

The current DNOW route guide can be reached at the web address provided below

www.distributionnow.com/freight

The DNOW routing guide is updated to insure that all lanes have the correct carrier listed

for questions, instructions, or shipments over 10,000#, contact our freight department at 281 823 4665.

DNOW will only pay for domestic freight shipped as described above.

| Item | Material/Description | Order Qty. | UM | Price per Unit | Net Value |
|------|----------------------|-----------|-----|----------------|-----------|
| 10 | ZNIP10<br>BARRIER CONCRETE 10 CTB PLAIN 2PCTB2-04<br>Item Release Date (Based on Vendor's Lead Time): 01/13/2017<br>Sales Order 16381073 Item 000010 | 20 | EA | 369.00 | 7,380.00 |
| 20 | ZNIP10<br>TRUCKING<br>Item Release Date (Based on Vendor's Lead Time): 01/13/2017<br>Sales Order 16381073 Item 000020 | 2 | EA | 775.00 | 1,550.00 |
| | Total Net Item Value excluding TAX USD | | | | 8,930.00 |

** The Last Pages are the Terms and Conditions **

**EXHIBIT 1**

## DNOW L.P. and its AFFILIATES ("Buyer") PURCHASE ORDER TERMS AND CONDITIONS

These Terms and Conditions are part of the printed Purchase Order located on the reverse of this form or which are attached to these Terms and Conditions (collectively "Order"). Unless otherwise agreed to by an authorized representative of Buyer, these Terms and Conditions shall override any terms and conditions of sale of Seller. This Order contains the complete, sole and final agreement between Buyer and Seller and no agreement or other understanding in any way purporting to modify the Order hereof, shall be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.

**Price protection:** By acceptance of this Order, Seller agrees that the prices contained herein are not in excess of Seller's list, catalog or published prices; that such prices are not higher than prices charged to other purchasers purchasing similar goods and services; that the said prices are not in excess of the prices provided by any applicable law, government decree, order or regulation. If reference to the price is omitted from the Order or any acknowledgment thereof, it is agreed that the items herein ordered shall be priced at that figure which was last quoted by Seller to or paid by Buyer at or at the prevailing market price, whichever is lowest.

**Invoices:** Seller shall submit invoices, in number of copies specified on the face of this Order, on date of shipment for each and every separate shipment. Delays in receiving invoices, errors, or omissions shall be considered just cause for withholding payment without loss of cash or time discount privileges.

**Time is of the essence:** Time is of the essence with respect to the delivery date indicated on the face hereof and Buyer reserves the right to terminate this Order if the specified delivery date is not met. Notwithstanding any other right or remedy available to Buyer, in the event of Seller's failure to meet the delivery date indicated on the face hereof, Buyer at its discretion may charge to Seller, and Seller agrees to be liable for, any economic loss suffered by Buyer due to Seller's late delivery.

**Shipping:** Seller will observe specified shipping instructions, and unless otherwise requested, ship goods by the best reasonable method possible. If goods and services are forwarded via an unreasonable and expensive method, excess charges will be for the account of Seller. All packaging instructions must be observed. Buyer will not pay for packing unless specifically agreed. Unless otherwise specified, title to the goods will vest in Buyer upon acceptance of the goods by Buyer or upon identification of the goods to the order, whichever is earlier. Seller warrants title to the goods free and clear of liens, taxes or encumbrances whatsoever. Irrespective of vesting of title, Seller will bear the risk of loss and damage of the goods until the same are delivered in good condition and accepted by Buyer in accordance with this Order. Shipments in excess of the quantities specified in this Order, without permission of Buyer, are subject to return for credit at Buyer's option and at Seller's expense.

**Inspection:** Buyer shall have the right to inspect all goods ordered in Seller's possession before shipment and after arrival at any shipping destination at any business time. Buyer or subsequent purchaser may reject any and all goods specified on the delivery date indicated on the face hereof, Such rejected goods will be at Seller's sole risk and expense. Any inspection by Buyer pursuant to the provisions of this Order shall not release Seller from any of the warranty obligations stated herein.

**Indemnity:** Seller shall protect, defend, reimburse, indemnify and hold harmless the Buyer and any of its subsidiaries and affiliates from any loss, cost, damage, or expense (including court costs and attorney's fees) arising from (1) any breach of this Order and/or the performance of this Order by Seller, including injury or death of any person, or damage or loss of any property (including without limitation, Buyer's or subsequent purchaser's property) asserted against or incurred by Buyer or the other indemnitees at any time, unless due to Buyer's sole gross negligence; (2) any claims or actions, incident to any infringement or claimed infringement of any patent in the manufacture, use, and/or sale of goods, in this case Seller also agrees to furnish to Buyer an equivalent substitute good of equal or better quality; (3) any claims arising out of Seller's failure to comply with any applicable laws, treaties, ordinances, codes, and regulations, (4) any claims or liens attaching to the property or equipment of Buyer, and (5) any claims arising in connection of payroll taxes and employee benefits of Seller's personnel.

**Insurance:** Seller agrees to carry at its sole expense the following insurance with insurers having an AM Best rating of A- or better on a form satisfactory to Buyer: Comprehensive General Liability Insurance including Contractual, Products and Completed Operations Insurance and Sudden and Accidental Pollution, covering all operations and work hereunder in the amounts of not less than $1,000,000 for bodily injury and property damage. Such insurance shall specifically refer to this contract and shall specifically cover all of the liability assumed by Seller hereunder. Such insurance shall provide a limit of coverage of twelve (12) months after being placed into service by Buyer or a subsequent purchaser or twenty-four (24) months from date of acceptance by Buyer, whichever period expires earlier. If within the warranty period, Buyer or subsequent purchaser discovers any defect, error, nonconformity, omission, deficiency, or breach of any warranty as to the goods, Seller will, at Buyer's option, promptly re-perform, or replace the goods in question at Seller's sole cost. Any repaired, re-performed, or replaced good shall be warranted for a period of twelve (12) months from its acceptance by Buyer or subsequent purchaser. Should Seller's standard warranty stated herein, those parts of the warranty that exceed shall automatically be incorporated herein.

**Compliance with Laws:** Within Seller's performance, Seller is performing work hereunder. Compliance with the laws of states in which Seller is performing work hereunder, Automobile Liability including all owned, hired and non-owned vehicles used in connection with operations and work performed with $1,000,000 Combined Single Limit, Workers' Compensation/Employers Liability covering Seller's employees. Statutory WC, plus $1,000,000 in Employers Liability and in name Buyer and all affiliates as Additional Insured on all policies except Workers' Compensation and Employers Liability and provide a Waiver of Subrogation on all policies as respects to work performed or services and products provided under this agreement. Seller shall immediately furnish Buyer with a certificate of insurance pursuant to above requirements. Certificate holder will be listed as Buyer and all affiliated companies. Seller must provide thirty (30) days' notice to Buyer for cancellation of policies listed on Certificate of Insurance to Buyer. If Seller's operations include professional services, Seller shall also maintain Professional Liability Insurance with limits of $5,000,000. The above requirements are minimum requirements and shall not limit Seller's liability to Buyer and its affiliated companies in any manner.

**Warranty:** Seller warrants that the goods provided will (a) strictly conform to the description set or part of the order by written notice. Upon termination, or any other circumstances, Seller will not be merchantable, quality and fit for the purpose(s) intended; (c) conform with all applicable laws, ordinances, codes and regulations, and, unless Seller's standard warranty provides for a longer period, (d) be free from all defects for a period of twelve (12) months after being placed into service by Buyer or a subsequent purchaser or twenty-four (24) months from date of acceptance by Buyer, whichever period expires earlier. If within the warranty period, Buyer or subsequent purchaser discovers any defect, error, nonconformity, omission, deficiency, or breach of any warranty as to the goods, Seller will, at Buyer's option, promptly re-perform, or replace the goods in question at Seller's sole cost.

**Product Alerts:** In order to assure the proper and safe use of goods, Seller warrants that it shall furnish together with all goods offered all appropriate so-called "product warnings" adequate to permit such proper and safe use of the goods.

**Cancellation:** Unless otherwise provided, Buyer has the right at any time to terminate all or part of the order by written notice. Upon termination, or any other circumstances, Seller will not be entitled to any lost profit, lost revenue, lost business opportunity, or any incidental, indirect, economic, consequential, or other damages, nor will Buyer be liable to pay any costs of termination.

**Confidential Information:** All Buyer information is proprietary and confidential to Buyer and will be used solely by Seller for the purposes of this order. Any and all such Buyer information shall be treated and protected by Seller as strictly proprietary and confidential and shall not be disclosed to any third party without the prior written consent of Buyer. Seller agrees that it will not use any Buyer information related to the goods or services or otherwise obtained under this Order including, but not limited to, Buyer's company or trade names (in any form) or the fact that it is doing business with Buyer, in

# EXHIBIT 1

any marketing, advertising or public relations material of Seller without the express, written consent of Buyer. Such consent can be withheld at the sole discretion of Buyer.

**Governing Law:** Buyer and Seller agree that this Order shall be governed by the laws of the State of Texas, without regard to any conflicts of law principles of said jurisdiction that might require application of the laws of another jurisdiction. Buyer and Seller agree that all disputes in any way arising out of or resulting from this Order shall be litigated, if at all, exclusively in the state and/or federal courts in Harris County, Texas.

**Assignment:** Seller shall not assign its rights and obligations under this Order without prior written approval from Buyer. Buyer, however, may assign its rights and obligations under this Order to any of its subsidiaries or affiliates without Seller's consent. This Order shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

**Miscellaneous:**

a.   Seller warrants that it has neither given nor received any commissions, payments, gifts, kickbacks, lavish or extensive entertainment, or other things of value to or from any employee or agent of Buyer or any third party in connection with this order and acknowledges that the giving or receiving of same would be a violation of Buyer's corporate policy and may result in the cancellation of this and all future orders.

b.   Any clause required to be included in a contract of this type by any applicable and valid federal, state or local law or administrative rule or regulation having the effect of law shall be deemed to be incorporated herein, including but not limited to any required affirmative action compliance program, minority business enterprises subcontractor program, employment of the handicapped, listing of employment openings for veterans, or equal opportunity clause.

c.   Seller agrees that all original work, including but not limited to drawings, specifications, maintenance publications and the like, qualify as work for hire to Buyer and as such are assigned to Buyer.

d.   All notices hereunder shall be deemed given if delivered in writing personally or by courier, or sent by U.S. mail, electronic transmission, telephone facsimile, or telegram to Buyer or to Seller at the address set forth in this order. Any notice given by mail or post shall be deemed given at the time such notice is deposited in the mail.

e.   If requested by Buyer, Seller shall provide Buyer with Export Control Classification Numbers ("ECCN") for applicable goods purchased hereunder.   Seller shall also provide all relevant documentation relating to the manner in which the ECCN was derived.

f.   Buyer's failure to insist on performance of any term, condition, or instruction, or failure to exercise any right or privilege, or Buyer's waiver of any breach or default, shall not thereafter waive any such term, condition, instruction, right or privilege.  No waiver of any provision of this Order, or a breach hereof, shall be effective unless it is in writing and signed by an authorized representative of Buyer. No waiver of a breach of this Order (whether express or implied) shall constitute a waiver of a subsequent breach.

g.   In addition to all of the remedies provided herein, Buyer hereby reserves all additional rights and remedies provided by law or equity.

h.   Buyer shall have a transferable, perpetual, royalty-free license to use all inventions, innovations, development, software or improvements, including but not limited to any patentable items, procedures, processes or concepts made in connection with or arising in whole or in part from performance or operation of the goods, materials, or services under this Order.

i.   Unless expressly approved in writing by authorized representative of Buyer, Seller has no authority to bind Buyer to any obligation or to enter into any agreement for the benefit of or on behalf of Buyer even if pursuant to or in furtherance of this Order and even if Buyer realizes a benefit thereof.

j.   In all circumstances, including Cancellation, Termination, Suspension, Force Majeure or prior cessation of this Order for any reason, Seller shall use its best efforts and act in good faith to limit any potential damages or additional expenses to Buyer and shall keep Buyer reasonably informed.

**EXHIBIT 1**

"B"

## Rincon, Valeria M

| | |
|---|---|
| **From:** | Ann Tyler <atyler@triconprecast.com> |
| **Sent:** | Friday, January 13, 2017 10:10 AM |
| **To:** | Martinez, Ruben |
| **Subject:** | [EXTERNAL]  RE: 659111614 |

Good morning!
I have released the order to our freight department. They will be contacting Jay today. Thank you for the order. Have a great day!

**From:** Martinez, Ruben [mailto:Ruben.Martinez2@dnow.com]
**Sent:** Friday, January 13, 2017 9:39 AM
**To:** Ann Tyler
**Subject:** 659111614

Good Morning,
Please process attached PO , and ship as soon as possible to :

Mackey Yard
423 W Vaughn Rd
Cleburne, Tx 76033
ATTN : JAY SCOGIN 817-487-3792

THANK YOU

**Ruben Martinez**

**DistributionNOW**
2909 N. Main
Cleburne TX, 76033
Ruben.Martinez2@dnow.com
Direct: 817.556.0610
Moble: 817.240.8405
Fax: 817.556.2784
distributionnow.com

1

**EXHIBIT 1**



**EXHIBIT 1**



**EXHIBIT 1**



**EXHIBIT 1**

# PROPOSAL

Total - Water Damage Repair
423 W Vaughn Rd
Cleburne, TX 76033

TO:  Total                                                    Attn:  Jason Waybourn

*2225 W. Petersmith St.*
*Fort Worth, Texas 76102*
*P(817) 335-827*
*F(817) 336-827*

| JOB DESCRIPTION |
|---|
| Remove water damaged sheetrock, patch and paint as required, provide and install new FRP in restrooms, remove and re-install existing plumbing fixtures required to facilitate repairs. |

| Itemized Description | AMOUNT |
|---|---|
| Drywall and acoustical | $16,500 |
| Repair rubber base | $850 |
| Tape/bed/painting | $9,968 |
| Plumbing | $6,025 |
| Rubbish | $850 |
| Final clean | $950 |
| | |
| General Conditions | $2,240.00 |
| Overhead | $1,869.15 |
| Profit | $3,925.22 |
| Sales Tax | $3,562.13 |
| **TOTAL ESTIMATED JOB COST** | **$46,739. 0** |

Exclusions: Overtime, phasing, permit, energy code compliance, existing code violations, modifications/improvements beyond repair of existing finishes as noted and anything not specifically noted above.

*David Weatherford*
_____
PREPARED BY

2/13/2017
_____
DATE

_____
ACCEPTED BY

_____
DATE

# EXHIBIT 1

2017-50392 / Court: 215

# EXHIBIT D

**EXHIBIT 1**



DISTRIBUTION

**Valeria Rincon**
Corporate Counsel

**DNOW L.P.**
7402 N. Eldridge Parkway
Houston, TX 77041
PHONE: 281-823-4864
FACSIMILE: 281-823-5225
Valeria.Rincon@dnow.com

Houston, June 8, 2017

Gilbert Flores, JR Guzman
Tricon Precast Ltd.
15055 Henry Dr.
Houston, TX 77060

Re: Final notice before legal actions

Mr. Flores and Mr. Guzman,

This is the second notice related to the damages caused by your subcontractor at 423 W Vaughn Rd, Cleburne TX 76033 on January 18, 2017. According to the previous letter sent on June 1, 2017 you had until today June 8, 2017 to respond to our demand before we proceed with legal actions against your company. Today, June 8, 2017 we still have not received any response from you.

This if the final and last notice before we file a lawsuit against your company to recover all damages we have incurred as a result of your performance of the Purchase Order Nr. 659111614. You have until June 15, 2017 to respond to our request of immediate payment of USD **$49,079.50** to cover all the damages caused by your subcontractor at our customer premises before we move forward with legal actions against your company.

A copy of the previous letter is attached for your reference.

If you or your Attorney have any questions, please feel free to contact me.

Yours truly,

Valeria Rincon.

**EXHIBIT 1**



DISTRIBUTION

**NOW**™

Valeria Rincon
Corporate Counsel

DNOW L.P.
7402 N. Eldridge Parkway
Houston, TX 77041
PHONE: 281-823-4864
FACSIMILE: 281-823-5225
Valeria.Rincon@dnow.com

Houston, June 1, 2017

Gilbert Flores
General Partner
Tricon Precast Ltd.
15055 Henry Dr.
Houston, TX 77060

Re: Damages caused by Tricon's subcontractor at 423 W Vaughn Rd, Cleburne TX 76033

Mr. Flores,

On January 13 of the present year, DNOW L.P. ("DNOW") placed Purchase Order ("PO") Nr. 659111614 with your company for the purchase and delivery of concrete reinforced barriers to DNOW's customer premises. The last pages of this PO include the governing terms and conditions of this transaction ("T&C's"). Please find a copy attached for your reference as attachment "A".

Tricon accepted this PO by e-mail sent on January 13, 2017 by Ann Tyler to Ruben Martinez with no comment or objection regarding the PO nor the T&C's that were attached to the PO. Please find a copy of this e-mail as attachment "B" enclosed to this letter.

As agreed, Tricon Precast Ltd. ("Tricon") delivered the products to DNOW's customer premises at 423 W Vaughn Rd, Cleburne TX 76033 on January 18, 2017. Right after the products were delivered, just when the driver was departing from the customer's premises between 8-10 AM, the driver crashed into a water hydrant located at DNOW's customer premises, causing several damages. Please find attached pictures that compare the condition of the premises right when the trucking company was entering the premises at 9:08AM (Attachment "C") and then after the truck left at 9:09AM (Attachment "D"). You can see the significant leak of water and additional damages right in the entrance of the premises ("Attachment "E").

Paragraph 6 of the T&C's that apply to this transaction states the following:
"Seller shall protect, reimburse, indemnify and hold harmless the Buyer and any of its subsidiaries and affiliates from any loss, cost, damage, or expense (including court costs and attorney's fees) arising from (1) the breach of this Order and/or the performance of this Order by Seller, including injury or death of any person, or damage or loss of any property (including without limitation Buyer's or subsequent purchaser's property) asserted against or incurred by Buyer or the other indemnities at any time, unless due to Buyer's sole gross negligence; (2) any claims or actions, incident to any infringement or claimed infringement of any patent in the manufacture, use, and/or sale of goods, in this case Seller also agrees to furnish to Buyer an equivalent substitute good of equal or better quality; (3) any claims arising out of Seller's failure to comply with any applicable laws, treaties, ordinances, codes, and regulations, (4) any claims or liens attaching to the

**EXHIBIT 1**

property or equipment of Buyer, and (5) any claims arising in connection of payroll taxes and employee benefits of Seller's personnel."

According to paragraph 6 of the T&C's, Tricon is responsible for all damages to DNOW's customer premises arising out of the performance of the PO. DNOW placed an order with Tricon for the purchase and delivery of products, which means that "performance of the order" includes delivery of products regardless if this delivery was performed by Tricon or Tricon's subcontractor. We are aware that Tricon subcontracted the delivery portion of the PO and that Tricon retained a trucking company of Tricon's choice to complete this delivery. However, this does not change Tricon's contractual and legal obligation to indemnify us for the damages caused by Tricon's subcontractor to our customer's premises.

We have been notified by our business team that they have tried to contact your company several times to try to resolve this matter in an amicable way but they have not received a positive answer yet.

Based on the above we demand an immediate payment of USD $49,079.50 to cover all the damages caused by your subcontractor at DNOW's customer premises. Attached please find a quote for USD $46,389.50 sent by a third party company that shows the breakdown of all the repairs that must be done to the damaged building (attachment "F"). In addition to this quote, there is another third party's quote for repairs to be done to the road at USD $2,340. The total cost to bring the premises to the same condition they were before your subcontractor caused all the damages is USD $49,079.50.

Please send your response as soon as possible and in no event later than June 8 of 2017. If we do not receive a response prior to this date, we will proceed with legal actions.

If you or your Attorney have any questions, please feel free to contact me.

Yours truly,

Valeria Rincon.

**EXHIBIT 1**

"A"



# DISTRIBUTION **NOW**
## DNOW L.P.

## Purchase order 659111614

**TRICON PRECAST LTD**
15055 HENRY RD
HOUSTON TX 77060
Tel No. 281-931-9832
Fax No. 281-931-0061
Your Vendor Number with us 1002018

PO Date: 01/13/2017
Contact Person: RUBEN MARTINEZ
Email: Ruben.Martinez2@dnow.com
Currency: USD
Ordering Plant : TX60
Delivery Date: 01/19/2017
Final Destination: USA

DNOW L.P.
CLEBURNE DSC
2809 NORTH MAIN STREET
CLEBURNE TX 76033
Tel No: 817-556-0610
Fax No: 817-556-2784

DNOW L.P.
ATTN: DISTRIBUTION ACCOUNTS PAYABLE
PO Box 40986
Houston TX 77240-0986

**SHIPPING INSTRUCTIONS:**
PLEASE NOTE SHIPPING INSTRUCTIONS HAVE CHANGED AS OF 10/24/14.

Shipping Instructions:

Free freight allowed orders, use your best method.

If not free freight allowed, please ship as follows:

All bills of lading or documentation for this order must contain this PO number and in a reference field place
our cost center number 107808.

Single-piece shipments under 150# and multi-piece shipments under 300# combined weight, ship UPS.

UPS shipment rules:

(1) use UPS Account # E62A25
(2) place NOW PO # in the Reference field
(3) max weight of any single piece is 150#
(4) DO NOT PALLETIZE FOR UPS and do NOT ship UPS Freight

\*\* The Last Pages are the Terms and Conditions \*\*

**EXHIBIT 1**

# DISTRIBUTION NOW

## Purchase order 659111614

Information
PO Date: 01/13/2017

For single-piece shipments over 150# or multi-piece shipments over 300# combined weight, refer to DNOW route guide and ship collect.

If not shipping direct to DNOW, bill freight third party bill to P.O. Box 40498 Houston, TX 77240, with PO & cost center numbers attached.

The current DNOW route guide can be reached at the web address provided below

www.distributionnow.com/freight

The DNOW routing guide is updated to insure that all lanes have the correct carrier listed

For questions, instructions, or shipments over 10,000#, contact our freight department at 281 823 4655.

DNOW will only pay for domestic freight shipped as described above.

| Item | Material/Description | Order Qty. | UM | Price per Unit | Net Value |
|---|---|---|---|---|---|
| 10 | ZNIP10 BARRIER CONCRETE 10 CTB PLAIN 2PCTB2-04 Item Release Date (Based on Vendor's Lead Time): 01/13/2017 Sales Order /6381073 Item 000010 | 20 | EA | 369.00 | 7,380.00 |
| 20 | ZNIP10 TRUCKING Item Release Date (Based on Vendor's Lead Time): 01/13/2017 Sales Order /6381073 Item 000020 | 2 | EA | 775.00 | 1,550.00 |

Total Net Item Value excluding TAX USD  8,930.00

** The Last Pages are the Terms and Conditions **

**EXHIBIT 1**

## DNOW, L.P. and its AFFILIATES ("Buyer") PURCHASE ORDER TERMS AND CONDITIONS

These Terms and Conditions are part of the printed Purchase Order located on the reverse of this form on which are attached to these Terms and Conditions (collectively "Order"). Unless otherwise agreed to by an authorized representative of Buyer, these Terms and Conditions shall override any terms and conditions of sale of Seller. This Order contains the complete, sole and final agreement between Buyer and Seller and no agreement or other understanding in any way purporting to modify the Order hereof, shall be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.

**Price protection:** By acceptance of this Order Seller agrees that the prices contained herein are not in excess of Seller's list, catalog or published prices; that such prices are not higher than prices charged to other purchasers purchasing similar goods and services; that the said prices are not in excess of the prices provided by any applicable law, government decrees, order or regulation. If reference to the price is omitted from the Order or any acknowledgement thereto, it is agreed that the items herein ordered shall be priced at that figure which was last quoted by Seller to or paid by Buyer or at the prevailing market price, whichever is lowest.

**Invoices:** Seller shall submit invoices, in number of copies specified on the face of this Order, on date of shipment for each and every separate shipment. Delays in receiving invoices, errors, or omissions shall be considered just cause for withholding payment without loss of cash or time discount privileges

**Termination:** Time is of the essence with respect to delivery dates indicated on the face hereof and Buyer reserves the right to terminate this Order if the specified delivery date is not met. Notwithstanding any other rights or remedy available to Buyer, in the event of Seller's failure to meet the delivery date indicated on the face hereof, Buyer at its discretion may charge to Seller, and Seller agrees to be liable for, any economic loss suffered by Buyer due to Seller's late delivery.

**Shipping:** Seller will observe specified shipping instructions, and unless otherwise requested, any goods by the best reasonable method possible. If goods and services are forwarded via an unreasonable and expensive method, excess charges will be for the account of Seller. All packaging instructions must be observed. Buyer will not pay for packing unless specifically agreed. Unless otherwise specified, title to the goods will vest in Buyer upon acceptance of the goods by Buyer or upon identification of the goods to the order, whichever is earlier. Seller warrants title to the goods free and clear of all liens, taxes or encumbrances whatsoever. Irrespective of vesting of title, Seller will bear the risk of loss and damage of the goods until the same are delivered in good condition and accepted by Buyer in accordance with this Order. Shipments in excess of the quantities specified in this Order, without permission of Buyer, are subject to return for credit at Buyer's option and at Seller's expense.

**Inspection:** Buyer shall have the right to inspect all goods ordered herein at any time at Seller's possession before shipment and after arrival at any shipping destination or at any business time. Buyer or subsequent purchaser may reject any and all goods not substantially conforming to technical specifications of the Order. Such rejected goods will be at Seller's sole risk and expense. Any inspection by Buyer pursuant to the provisions of this Order shall not release Seller from any of the warranty obligations stated herein.

**Indemnity:** Seller shall protect, reimburse, indemnify and hold harmless the Buyer and all of its subsidiaries and affiliates from any loss, cost, damage, or expense (including court costs and attorney's fees) arising from (1) the breach of this Order and/or the performance of this Order by Seller including injury to or death of any person, or damage or loss of any property (including without limitation Buyer's or subsequent purchaser's property) asserted against or incurred by Buyer or the other indemnities at any time, unless due to Buyer's sole gross negligence; (2) any claims or actions, incident to any infringement or claimed infringement of any patent in the manufacture, use, and/or sale of goods, in this case Seller also agrees to furnish to Buyer an equivalent substitute good of equal or better quality; (3) any claims arising out of Seller's failure to comply with any applicable laws, treaties, ordinances, codes, and regulations, (4) any claims or liens attaching to the property or equipment of Buyer, and (5) any claims arising in connection of payroll taxes and employee benefits of Seller's personnel.

**Insurance:** Seller agrees to carry at its sole expense the following insurance with insurers having an AM Best rating of A- or better on a form satisfactory to Buyer: Comprehensive General Liability insurance including Contractual, Products and Completed Operations insurance and Sudden and Accidental Pollution, covering all operations and work hereunder in the amounts not less than $5,000,000 but only if higher or broader (a) an aggregate of $1,000,000 for each occurrence for property damage. Such insurance shall specifically cover on a primary basis the liability assumed by Seller hereunder. Seller also agrees to carry, at its sole expense, Automobile Liability (including all owned, hired and non-owned) vehicles used in connection with operations and work performed under this agreement with $1,000,000 Combined Single Limit, Workers' Compensation/Employers' Compensation covering Sellers employees. Statutory WC, plus $1,000,000 in Employers Liability and in Compliance with the laws of states in which Seller is performing work hereunder. Umbrella/Excess Liability no less than $5,000,000 in excess of the above listed insurance. All policies shall name Buyer and all affiliates as Additional Insured on all policies except Workers' Compensation and Employers Liability and provide a Waiver of Subrogation on all policies as respects to work performed or services and products provided under this agreement. Seller shall immediately furnish Buyer with a certificate of insurance pursuant to above requirements. Certificate holder will be listed as Buyer and all affiliated companies. Seller must provide thirty (30) days' notice of cancellation on all policies. Such insurance to Buyer. If Seller's operations include professional services, Seller shall also maintain Professional Liability insurance with limits of $5,000,000. The above requirements are minimum requirements and shall not limit Seller's liability to Buyer and its affiliated companies in any manner.

**Warranty:** Seller warrants that the goods provided will (a) strictly conform to the specifications and other requirements stipulated in the Order or the attached specification sheets; (b) be of merchantable quality and fit for the purpose(s) intended; (c) conform with all applicable laws, ordinances, codes and regulations, and, unless Seller's standard warranty provides for a longer period, (d) be free from all defects for a period of twelve (12) months after being placed into service by Buyer or a subsequent purchaser or twenty-four (24) months from date of acceptance by Buyer, whichever period expires earlier. If within the warranty period, any goods are found to be defective, or otherwise not in conformance with this warranty, Buyer shall notify Seller, whereupon Seller shall, at its sole option, repair or replace the goods, or if neither repair nor replacement is practical, provide credit or refund. Any repaired good shall be warranted for a period of twelve (12) months from its acceptance by Buyer or subsequent purchaser. Should Seller's standard warranty for Goods exceed this warranty stated herein, Seller agrees that the warranty that exceed shall automatically be incorporated herein.

**Product Alerts:** In order to assure the proper and safe use of goods, Seller warrants that it shall furnish together with all appropriate all appropriate so-called "product warnings" adequate to permit such proper and safe use of the goods.

**Taxes:** Unless otherwise provided, Buyer has the right at any time to terminate all or part of the order by written notice. Upon termination, or any other circumstances, Seller will not be entitled to any lost profit, lost revenue, lost business opportunity, or any incidental, indirect, economic, consequential, or other damages, nor will Buyer be liable to pay any costs of termination. Seller shall keep all property of Buyer free and clear from any and all claims, liens and encumbrances.

**Confidential Information:** All Buyer Information is proprietary and confidential to Buyer and will be used solely by Seller for the purposes of this order. Any and all such Buyer Information shall be treated and protected by Seller as strictly confidential and shall not be disclosed to any third party without the prior written consent of Buyer. Seller agrees that it will not use any Buyer Information related to the order or services or otherwise obtained under the Order including, but not limited to, Buyer's company or trade names (in any form) or the fact that it is doing business with Buyer, in

# EXHIBIT 1

any marketing, advertising or public relations material of Seller without the express, written consent of Buyer. Such consent can be withheld at the sole discretion of Buyer.

**Governing Law:** Buyer and Seller agree that this Order shall be governed by the laws of the State of Texas, without regard to any conflicts of law principles of said jurisdiction that might require application of the laws of another jurisdiction. Buyer and Seller agree that all disputes in any way arising out of or resulting from this Order shall be litigated, if at all, exclusively in the state and/or federal courts in Harris County, Texas.

**Assignment:** Seller shall not assign its rights and obligations under this Order without prior written approval from Buyer. Buyer, however, may assign its rights and obligations under this Order to any of its subsidiaries or affiliates without Seller's consent. This Order shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

**Miscellaneous:**

a.  Seller warrants that it has neither given nor received any commissions, payments, gifts, kickbacks, lavish or extensive entertainment, or other things of value to or from any employee or agent of Buyer or any third party in connection with this order and acknowledges that the giving or receiving of same would be a violation of Buyer's corporate policy and may result in the cancellation of this and all future orders.

b.  Any clause required to be included in a contract of this type by any applicable and valid federal, state or local law or administrative rule or regulation having the effect of law shall be deemed to be incorporated herein, including but not limited to any required affirmative action compliance program, minority business enterprises subcontractor program, employment of the handicapped, listing of employment openings for veterans, or equal opportunity clause.

c.  Seller agrees that all original work, including but not limited to drawings, specifications, maintenance publications and the like, qualify as work for hire to Buyer and as such are assigned to Buyer.

d.  All notices hereunder shall be deemed given if delivered in writing personally or by courier, or sent by U.S. mail, electronic transmission, telephone facsimile, or telegram to Buyer or to Seller at the address set forth in this order. Any notice given by mail or post shall be deemed given at the time such notice is deposited in the mail.

e.  If requested by Buyer, Seller shall provide Buyer with Export Control Classification Numbers ("ECCN") for applicable goods purchased hereunder.  Seller shall also provide all relevant documentation relating to the manner in which the ECCN was derived.

f.  Buyer's failure to insist on performance of any term, condition, or instruction, or failure to exercise any right or privilege, or Buyer's waiver of any breach or default, shall not thereafter waive any such term, condition, instruction, right or privilege. No waiver of any provision of this Order, or a breach hereof, shall be effective unless it is in writing and signed by an authorized representative of Buyer. No waiver of a breach of this Order (whether express or implied) shall constitute a waiver of a subsequent breach.

g.  In addition to all of the remedies provided herein, Buyer hereby reserves all additional rights and remedies provided by law or equity.

h.  Buyer shall have a transferable, perpetual, royalty-free license to use all inventions, innovations, development, software or improvements, including but not limited to any patentable items, procedures, processes or concepts made in connection with or arising in whole or in part from performance or operation of the goods, materials, or services under this Order.

i.  Unless expressly approved in writing by authorized representative of Buyer, Seller has no authority to bind Buyer to any obligation or to enter into any agreement for the benefit of or on behalf of Buyer even if pursuant to or in furtherance of this Order and even if Buyer realizes a benefit thereof.

j.  In all circumstances, including Cancellation, Termination, Suspension, Force Majeure or prior cessation of this Order for any reason, Seller shall use the best efforts and act in good faith to limit any potential damages or additional expenses to Buyer and shall keep Buyer reasonably informed.

**EXHIBIT 1**

"B"

**Rincon, Valeria M**

| | |
|---|---|
| **From:** | Ann Tyler <atyler@triconprecast.com> |
| **Sent:** | Friday, January 13, 2017 10:10 AM |
| **To:** | Martinez, Ruben |
| **Subject:** | [EXTERNAL]  RE: 659111614 |

Good morning!
I have released the order to our freight department. They will be contacting Jay today. Thank you for the order. Have a great day!

**From:** Martinez, Ruben [mailto:Ruben.Martinez2@dnow.com]
**Sent:** Friday, January 13, 2017 9:39 AM
**To:** Ann Tyler
**Subject:** 659111614

Good Morning,
Please process attached PO , and ship as soon as possible to :

Mackey Yard
423 W Vaughn Rd
Cleburne, Tx 76033
ATTN : JAY SCOGIN 817-487-3792

THANK YOU

**Ruben Martinez**

**DistributionNOW**
2909 N. Main
Cleburne TX, 76033
Ruben.Martinez2@dnow.com
Direct: 817.556.0610
Moble: 817.240.8405
Fax: 817.556.2784
distributionnow.com

1

**EXHIBIT 1**



**EXHIBIT 1**



**EXHIBIT 1**



**EXHIBIT 1**

"F"

# PROPOSAL

Total - Water Damage Repair
423 W Vaughn Rd
Cleburne, TX 76033

TO:  Total                                            Attn:  Jason Waybourn

2225 W. Petersmith St.
Fort Worth, Texas 76102
P(817) 336-827
F(817) 336-827

| JOB DESCRIPTION |
|---|
| Remove water damaged sheetrock, patch and paint as required, provide and install new FRP in restrooms, remove and re-install existing plumbing fixtures required to facilitate repairs. |

| Itemized Description | AMOUNT |
|---|---|
| Drywall and acoustical | $16,500 |
| Repair rubber base | $850 |
| Tape/bed/painting | $9,968 |
| Plumbing | $6,025 |
| Rubbish | $850 |
| Final clean | $950 |
| | |
| General Conditions | $2,240.00 |
| Overhead | $1,869.15 |
| Profit | $3,925.22 |
| Sales Tax | $3,562.13 |
| TOTAL ESTIMATED JOB COST | $46,739. 0 |

Exclusions: Overtime, phasing, permit, energy code compliance, existing code violations, modifications/improvements beyond repair of existing finishes as noted and anything not specifically noted above.

David Weatherford
_____
PREPARED BY

2/13/2017
_____
DATE

_____
ACCEPTED BY

_____
DATE

# EXHIBIT 1

2017-50392 / Court: 215

# EXHIBIT E

**EXHIBIT 1**

## EXHIBIT E - REQUESTS FOR ADMISSION TO TRICON PRECAST LTD.

### Preliminary Instructions

In accordance with Rule 198.2 of the Texas Rules of Civil Procedure, unless you state an objection or asserts a privilege, you shall specifically admit or deny the statements contained herein, or set forth in detail the reasons why you cannot admit or deny. Your response must fairly meet the substance of the request. You may not give lack of information or knowledge as a reason for failure to admit or deny unless, after you have made a reasonable inquiry, the information known or easily obtainable by you is insufficient to enable you to admit or deny. You may not object to a Request for Admission on the sole ground that the requested admission presents a genuine issue for trial.

If you deny any request, your denial shall fairly meet the substance of the requested admission, and when good faith requires that you qualify your answer or deny only a part of a Request for Admission, you must admit those parts of the Request for Admission that are true or deny those parts of the Request for Admission that are false, and either deny or admit, respectively, the remainder.

### Definitions & Instructions

As used herein, unless specifically indicated otherwise, the following terms have the following meaning(s):

1.    The terms "Tricon" and "you" mean and refer to Tricon Precast Ltd. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

2.    The term "DNOW" means and refers to DNOW L.P. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

3.    The term "PFS" means and refers to Paladin Freight Solutions Inc. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

4.    The term "Petition" means and refers to DNOW's Petition in this lawsuit.

1

**EXHIBIT 1**

  
## Requests for Admission

### REQUEST NO. 1:

Admit that the document attached to the Petition as Exhibit A is a true and correct copy of DNOW Purchase Order 659111614.

### RESPONSE:

### REQUEST NO. 2:

Admit that Tricon received DNOW Purchase Order 659111614 on January 13, 2017.

### RESPONSE:

### REQUEST NO. 3:

Admit that Tricon agreed to the terms of DNOW Purchase Order 659111614.

### RESPONSE:

### REQUEST NO. 4:

Admit that Tricon did not object in writing to the terms of DNOW Purchase Order 659111614.

### RESPONSE:

### REQUEST NO. 5:

Admit that Tricon did not object orally to the terms of DNOW Purchase Order 659111614.

### RESPONSE:

### REQUEST NO. 6:

Admit that, after receiving DNOW Purchase Order 659111614, Tricon sent the email attached to the Petition as Exhibit B.

### RESPONSE:

**EXHIBIT 1**

**REQUEST NO. 7:**

Admit that Tricon agreed to deliver goods to DNOW's customer in Cleburne, Texas.

**RESPONSE:**

**REQUEST NO. 8:**

Admit that Tricon hired PFS to deliver goods to DNOW's customer in Cleburne, Texas.

**RESPONSE:**

**REQUEST NO. 9:**

Admit that in the course of delivering goods to DNOW's customer in Cleburne, Texas, on behalf of Tricon, the driver caused damage to DNOW's customer's property.

**RESPONSE:**

**REQUEST NO. 10:**

Admit that DNOW has demanded that Tricon reimburse DNOW for the cost of repairing DNOW's customer's property.

**RESPONSE:**

**REQUEST NO. 11:**

Admit that Tricon received the June 1, 2017 letter attached to the Petition as Exhibit C.

**RESPONSE:**

**REQUEST NO. 12:**

Admit that Tricon received the June 8, 2017 letter attached to the Petition as Exhibit D.

**RESPONSE:**

**EXHIBIT 1**

**REQUEST NO. 13:**

Admit that Tricon has not responded to the June 1, 2017 Letter attached as Exhibit C to the Complaint.

**RESPONSE:**


**REQUEST NO. 14:**

Admit that Tricon has not responded to the June 8, 2017 Letter attached as Exhibit D to the Complaint.

**RESPONSE:**


**REQUEST NO. 15:**

Admit that Tricon has not reimbursed DNOW for any of the damages described in the June 1, 2017 Letter attached as Exhibit C to the Complaint.

**RESPONSE:**

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT F

**EXHIBIT 1**

**EXHIBIT F - REQUESTS FOR ADMISSION TO
PALADIAN FREIGHT SOLUTIONS, INC.**

<u>Preliminary Instructions</u>

In accordance with Rule 198.2 of the Texas Rules of Civil Procedure, unless you state an objection or asserts a privilege, you shall specifically admit or deny the statements contained herein, or set forth in detail the reasons why you cannot admit or deny. Your response must fairly meet the substance of the request. You may not give lack of information or knowledge as a reason for failure to admit or deny unless, after you have made a reasonable inquiry, the information known or easily obtainable by you is insufficient to enable you to admit or deny. You may not object to a Request for Admission on the sole ground that the requested admission presents a genuine issue for trial.

If you deny any request, your denial shall fairly meet the substance of the requested admission, and when good faith requires that you qualify your answer or deny only a part of a Request for Admission, you must admit those parts of the Request for Admission that are true or deny those parts of the Request for Admission that are false, and either deny or admit, respectively, the remainder.

<u>Definitions & Instructions</u>

As used herein, unless specifically indicated otherwise, the following terms have the following meaning(s):

1.  The terms "PFS" and "you" mean and refer to Paladin Freight Solutions Inc. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

2.  The term "DNOW" means and refers to DNOW L.P. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

3.  The term "Tricon" means and refers to Tricon Precast Ltd. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

4.  The term "L&M" means and refers to L&M Eagle Express, Luis Acosta Hernandez and any person or entity acting on behalf of either of them.

1

**EXHIBIT 1**

5.    The term "Petition" means and refers to DNOW's Petition in this lawsuit.

**EXHIBIT 1**

<u>Requests for Admission</u>

**REQUEST NO. 1:**

Admit that Tricon hired you to deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 2:**

Admit that you subcontracted with L&M to deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 3:**

Admit that you did deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 4:**

Admit that in the course of delivering goods to 423 W. Vaughn Road in Cleburne, Texas, your driver's vehicle collided with a water hydrant.

**RESPONSE:**

**REQUEST NO. 5:**

Admit that in the course of delivering goods to 423 W. Vaughn Road in Cleburne, Texas, your driver's vehicle caused property damage.

**RESPONSE:**

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT G

**EXHIBIT 1**

## EXHIBIT G - REQUESTS FOR ADMISSION TO
## LUIS ACOSTA HERNANDEZ d/b/a L&M EAGLE EXPRESS

### Preliminary Instructions

In accordance with Rule 198.2 of the Texas Rules of Civil Procedure, unless you state an objection or asserts a privilege, you shall specifically admit or deny the statements contained herein, or set forth in detail the reasons why you cannot admit or deny. Your response must fairly meet the substance of the request. You may not give lack of information or knowledge as a reason for failure to admit or deny unless, after you have made a reasonable inquiry, the information known or easily obtainable by you is insufficient to enable you to admit or deny. You may not object to a Request for Admission on the sole ground that the requested admission presents a genuine issue for trial.

If you deny any request, your denial shall fairly meet the substance of the requested admission, and when good faith requires that you qualify your answer or deny only a part of a Request for Admission, you must admit those parts of the Request for Admission that are true and deny those parts of the Request for Admission that are false, and either deny or admit, respectively, the remainder.

### Definitions & Instructions

As used herein, unless specifically indicated otherwise, the following terms have the following meaning(s):

6. The term "PFS" means and refers to Paladin Freight Solutions Inc. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

7. The term "DNOW" means and refers to DNOW L.P. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

8. The term "Tricon" means and refers to Tricon Precast Ltd. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

9. The terms "L&M" and "you" mean and refer to L&M Eagle Express, Luis Acosta Hernandez and any person or entity acting on behalf of either of them.

1

**EXHIBIT 1**

10.   The term "Petition" means and refers to DNOW's Petition in this lawsuit.

2

**EXHIBIT 1**

<u>Requests for Admission</u>

**REQUEST NO. 1:**

Admit that PFS hired you to deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 2:**

Admit that Tricon hired you to deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 3:**

Admit that you did deliver goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 4:**

Admit that in the course of delivering goods to 423 W. Vaughn Road in Cleburne, Texas, your driver's vehicle collided with a water hydrant.

**RESPONSE:**

**REQUEST NO. 5:**

Admit that in the course of delivering goods to 423 W. Vaughn Road in Cleburne, Texas, your driver's vehicle caused property damage.

**EXHIBIT 1**

2017-50392 / Court: 215

# EXHIBIT H

**EXHIBIT 1**

**EXHIBIT H – RULE 196 REQUESTS FOR PRODUCTION TO DEFENDANTS**

<u>Definitions & Instructions</u>

As used herein, unless specifically indicated otherwise, the following terms have the following meaning(s):

1. The terms "you" or "your" mean and refer to the person to whom these Requests for Production are directed.

2. The term "person" means any natural person, corporation, association, partnership, sole proprietorship or public entity.

3. The term "PFS" means and refer to Paladin Freight Solutions Inc. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

4. The term "DNOW" means and refers to DNOW L.P. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

5. The term "Tricon" means and refers to Tricon Precast Ltd. and its partners, members, directors, managers, officers, agents, employees, accountants, counsel, trustees, subsidiaries, parent organizations, predecessor(s) in interest, successor(s) in interest, and any other person or entities under the control or direction of any of the forgoing or purporting to act on behalf of any of them, regardless of affiliation or employment.

6. The term "L&M" means and refers to L&M Eagle Express, Luis Acosta Hernandez and any person or entity acting on behalf of either of them.

7. The term Petition means and refers to DNOW's Petition in this lawsuit.

8. The term "document" means and includes, without limitation, any kind of written, typewritten, printed or recorded material whatsoever, whether produced, reproduced or stored on paper, cards, tape, film, electronic facsimile, computer storage device or memory, or other media or data compilation from which information may be obtained, including accounts, address books, addenda, agreements, albums, articles, bank statements, blueprints, books, calendars, charts, checks (both front and reverse sides), communications, contracts, correspondence, declarations of trusts, deeds, deposit receipts, diagrams, diaries, disks, drafts, films, forms, instruments of conveyance or for other purposes, invoices, journals, ledgers, letters, lists, logs,

1

**EXHIBIT 1**

mailgrams, maps, memoirs, memoranda, minutes, motion pictures, notations, notebooks, notes, notices, photographs, plans, pleadings, other writings filed with any court, powers of attorney, promissory notes, proofs of delivery, purchase orders, recordings, records, registers, schedules, sound recordings, summaries, telexes, working papers, writings, and all other material, whether in draft form or not, and whether a copy or an original. The term "document" shall further mean any letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation, and shall mean the original of any document as defined above, if available, or to a clear and legible copy thereof, if not available, as well as to any copies or drafts that have any notations of any sort, whether typed, printed, handwritten, or otherwise inscribed, which notations are not present on the original.

9.   The term "communication(s)" means any oral, written or electronic transmission of information, including, but not limited to, electronic mail (sent or received) conversations, meetings, discussions, telephone calls, telegrams, telecopies, telexes, seminars, conferences, messages, notes or memoranda. Where a discovery request asks you to identify a communication, please state: (1) the name, title and address of all participants in the communication; (2) the date of said communication; and (3) a description of the subject discussed during said communication.

10.   The phrase "relating to" means, without limitation, constituting, discussing, covering, concerning, or referring to, directly or indirectly in any way, the subject matter identified in a particular document request.

11.   If any documents cannot be produced in full, produce to the extent possible, specifying the reason for the inability to produce the remainder.

12.   In answering these requests, you are required to furnish all information in your possession, custody, or control.  You are to designate which of the information provided is not within your personal knowledge, and with respect to that information, you are to state the name and address of every person from whom it was received. If the information was obtained from a document, you are to provide a full description of the document from which the information was received, including the location of the document.

13.   These requests are continuing in nature. To the extent that any additional information is discovered by you after your response, you have an ongoing duty to disclose such information promptly.

14.   The words "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

15.   The term "any" means "all" and vice versa.

2

**EXHIBIT 1**

16.  The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

17.  The singular shall be construed to include the plural, and vice versa, to make the request inclusive rather than exclusive.

18.  Unless otherwise specified, the relevant time period for these requests is from Jan. 1, 2017 to the present.

**EXHIBIT 1**

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents and communications relating to DNOW Purchase Order 659111614, which is attached to the Petition as Exhibit A.

**RESPONSE:**

**REQUEST NO. 2:**

All documents and communications relating to your agreement to deliver the goods purchased by DNOW under DNOW Purchase Order 659111614, which is attached to the Petition as Exhibit A.

**RESPONSE:**

**REQUEST NO. 3:**

All documents and communications relating to the delivery of goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 4:**

All agreements between you and any party to this lawsuit relating to the delivery of goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 5:**

All documents and communications relating to property damage that occurred in connection with the delivery of goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

**REQUEST NO. 6:**

4

**EXHIBIT 1**

All incident reports, summaries or other memoranda related to the delivery of goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**


**REQUEST NO. 7:**

All photographs of vehicles or any other property damaged during the delivery of goods to 423 W. Vaughn Road in Cleburne, Texas on January 18, 2017.

**RESPONSE:**

5

**EXHIBIT 1**